UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MELVIN BARHITE,

           Plaintiff,           Case No. 1:14-cv-670

v.                                        Honorable Robert Holmes Bell

MARY BERGHUIS et al.,

           Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and the Prison Rape Elimination Act (PREA), 42 U.S.C. § 15601 *et seq*. Before the Court is Plaintiff's motion for a temporary restraining order (docket #1), which has been docketed as a complaint. For the reasons set for herein, the motion will be denied, and Plaintiff will be directed to file an amended complaint on the form.

        I.        Factual allegations

Plaintiff Melvin Barhite is incarcerated by the Michigan Department of Corrections (MDOC) at Earnest C. Brooks Correctional Facility (IBC). Apparently, he intends to sue the following MDOC employees who work at IBC: Warden Mary Berghuis, Inspector S. Walton, Health Unit Manager (HUM) J. Gracik, Nurse Supervisor S. Castenholtz, and Grievance Coordinator J. Minnerick. His allegations cover four areas of concern: (1) the provision of inadequate medical supplies; (2) the provision of inadequate medical care; (3) lack of access to talking books, and (4) improper denial of prison grievances.

A. Medical supplies

Plaintiff alleges that he suffers from post-polio syndrome. Consequently, he has difficulty walking. Also, he uses a catheter to urinate and must wear an absorbent pad or brief to contain the urine. When he arrived at IBC on February 12, 2014, he possessed a supply of "Tena for Men" incontinence pads (Tena pads), "Tena Extra Large Briefs," catheters, lubricant, and anti-bacterial soap. (Pl.'s Mot., docket #2, Page ID#10.) The soap and lubricant allow Plaintiff to change and clean his catheters. On March 6, 2014, he requested more supplies via a prisoner kite to the medical unit and filed a grievance about a lack of supplies. After a few days, he was given lubricant, but he was told that there were no Tena pads available at the facility. They would have to be ordered.

On March 15, Petitioner wrote another kite asking for one month's worth of supplies instead of a weekly supply. He was told that he would receive seven pads per week and seven briefs per week, but medical staff were awaiting direction from the supervisor, Defendant Castenholtz, on what do to about providing pads. On March 19, Defendant Castenholtz met with Plaintiff regarding his grievance and promised that she would order "something," but she indicated that she was concerned about "her" budget. (*Id.* at Page ID#12.) Plaintiff did not receive anything until March 25, when a nurse gave him "Kotex" brand "feminine napkins" (Kotex pads). (*Id.*)

According to Plaintiff, the Kotex pads were not suitable and, in any case, they are not designed for men. As Plaintiff puts it, "his penis [is] bigger than the Kotex," so the pads do not work. (*Id.* at Page ID#13.) For the next seven days, from March 26 to April 2, 2014, Plaintiff sent multiple kites to medical staff complaining that "he had pee running down his legs," and that he was "dirty" and "wet all the time" because the Kotex pads did not fit. (*Id.* at Page ID##13-17.) He did

not receive a response. Throughout that seven-day period, his underwear, pants and wheelchair seat were wet with urine. He filed a grievance on March 29.

On April 2, 2014, he received more supplies, which consisted of more Kotex pads. Plaintiff was not pleased. He told Inspector Walton that he was being "sexually assaulted" by medical staff, and he showed her the Kotex pads as proof. (*Id.* at Page ID#20.) She allegedly told Plaintiff that he should not "pursue this," but that she would call the medical unit. (*Id.* at Page ID#20.) That same day, Grievance Coordinator Minnerick denied his grievance about the Kotex pads.

On April 3, 2014, Plaintiff wrote a kite to medical staff complaining that he was having trouble inserting his catheter because he did not have lubricant. He also requested extra large briefs. He sent another kite on April 4, requesting catheters, lubricant and Tena pads. He did not receive a response until April 6, when he received some lubricant.

On April 4, he sent a letter to Warden Berghuis, Inspector Walton and other officials claiming that he had been sexually assaulted by Defendant Castenholtz. They did not respond.

On April 5, 7, and 8, Plaintiff sent kites requesting briefs and Tena pads and complaining about "[p]ee running down [his] leg[.]" (*Id.* at Page ID#25.) He did not receive a response.

By April 9, Plaintiff had developed a urinary tract infection, which he claims was the result of being "wet and dirty" all the time. (*Id.* at Page ID#28.) He wrote a kite to medical staff about it. He also spoke with Defendant Castenholtz and told her that he was "on FIRE," referring to the pain from his infection. (*Id.*) She told him, "I got nothing to say to you till you stop writing

kites about Kotex[.] We[']re done[.]" (*Id.*) Petitioner then wrote a grievance complaining that he was not receiving medical treatment.

The following day, a nurse treated Plaintiff for his infection. He tried to tell her about "what was going on," but she told him, "Mr. Barhite I'm doing what I'm ordered to do." (*Id.*) Plaintiff alleges that the nurse's supervisor was Defendant Castenholtz.

Plaintiff wrote more kites on April 16, 17, and 19, requesting supplies and complaining about "pee running down his legs." (*Id.* at Page ID#29.) By this time, he had started using wash rags and toilet paper try to keep himself dry, but he smelled bad, to the annoyance of other inmates. On April 19, he received more Kotex pads, lubricant, catheters and some extra large briefs.

On April 25, he met with HUM Gracik, who showed Plaintiff a list of Tena products and asked him what he used. He gave her the product code. She stated that the Kotex pads he had received were not gender-specific, and that he would not receive a response to his kites as long as they were about Kotex pads and they used profane, vulgar, rude and inappropriate language. Three days later, he received more Kotex pads.

On April 29, Defendant Castenholtz told him that he had been receiving too many catheters (eight per week). He was told that in the future, he would receive eight per month. Plaintiff claims that having fewer catheters subjects him to a higher risk of infection.

On May 5, he received more Kotex pads from a nurse. She told him, "I'm doing what I'm told to do[.] I'm told this is the right pad for you[.]" (*Id.* at Page ID#32.) When he asked who told her this, she responded, "My supervisor, Castenholtz, you know who." (*Id.*)

Finally, on May 6, a nurse exchanged Plaintiff's Kotex pads for Tena pads.

B. Medical care

*1. Toenails*

Plaintiff contends that he wrote a kite to healthcare staff on April 27, 2014, notifying them that he needed his toenails trimmed. A nurse visited him three days later and told him that he would be scheduled to see the medical provider. According to Plaintiff, MDOC policy required that he receive care within five days. By May 19, 2014, his nails had not been trimmed, so he filed a grievance. On June 10, 2013, Castenholtz allegedly interviewed Plaintiff, acknowledged that staff had violated policy, and "let [him] know he was getting nothing[.]" (Br. in Supp. of Mot., docket #2, Page ID#34.)

As of the filing date of his motion, he had not received care for his toenails. Plaintiff asserts that he is diabetic, which creates risk for "medical issues" with his toes. (*Id.*) His toenails have started curling, cracking and bleeding.

*2. Breathing*

Plaintiff contends that, on February 2014, he told a doctor at IBC that he would stop breathing at night, which Plaintiff contends is a sign of post-polio "lung paralysis." (*Id.* at Page ID#35.) The doctor allegedly told Plaintiff to have unit staff watch him sleep and report to medical if they noticed any issues. When Plaintiff told unit staff, however, they simply stated, "Looks like you[']re going to die[.]" (*Id.*) Plaintiff wrote a grievance about the issue.

On March 10, 2014, Nurse Castenholtz interviewed Plaintiff about the grievance but did nothing to correct the problem. Instead, she allegedly lied in response to the grievance. Plaintiff appealed the grievance response, and on April 14, 2014, he was interviewed by a physician

assistance (PA). On May 28, 2014, the PA told Castenholtz that Plaintiff was approved for a sleep study. Several weeks after that date, however, Plaintiff had not yet received a study.

### C.  Talking Book Program

On April 6, 2014, Plaintiff wrote a grievance complaining that he was not approved for a "Talking Book Tape Player." (*Id.* at Page ID#26.) An MDOC librarian told him that he needed to have his application approved by the medical department. The medical manager, Defendant Gracik, allegedly denied Plaintiff's application because he is not blind. Plaintiff, however, contends that he qualifies because of his polio-related disabilities, including his inability to walk. When Plaintiff met with Gracik on April 25, 2014, she told him that she denied the application because he is not blind.

### D.  Grievance Process

Plaintiff wrote a grievance on April 12, 2014, complaining that Defendant Minnerick was violating policy. Plaintiff was told that his grievance was duplicative. Inspector Walton sent the grievance to Defendant Minnerick for a response. Plaintiff claims that Defendant Minnerick's involvement in responding to the grievance violated prison policy.

On April 23, 2014, Plaintiff wrote a grievance complaining about being "sexually assaulted," but the grievance was improperly rejected by Defendant Minnerick, who allegedly lied about its contents. (*Id.* at Page ID#30.)

## II.     Claims

Based on the foregoing allegations, Plaintiff alleges that Defendants have subjected him to cruel and unusual punishment in violation of the Eighth Amendment. He also claims that Nurse Castenholtz forced him to use Kotex feminine napkins in retaliation for the fact that he filed

a prisoner grievance complaining that he was not receiving medical supplies. He further claims that the provision of Kotex napkins by Gracik and Castenholtz constitutes sexual assault in violation of the PREA. In addition, he claims that Minnerick intentionally prevented him from pursuing his right to redress through the grievance process, and that Walton and Berghuis did nothing to stop the alleged sexual assaults.

        III.     Injunctive Relief

As relief, Plaintiff requests the following:

> [Plaintiff] . . . request[s] by motion the court to issue an order . . . to prevent the Michigan Department of Corrections and/or [its] employees from sexually assaulting [Plaintiff], and to allow [Plaintiff] to report the ongoing sexual assaults to proper authorities with the power to investigate the criminal acts[.]
>
>                            ***
>
> [Plaintiff] simply ask this court to stop what[']s going on an[d] to see that [Plaintiff] can report this Federal law violation to the right authority[.] [Plaintiff] allows this court to do as it deems needed, court order, hearing, anything to stop this sexual assault[.]

(Mot., docket #1, Page ID##1, 6.)

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether Plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable

powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

At the outset, the Court notes that Plaintiff's requested injunction specifically asks the Court for an order to stop the alleged sexual assaults by Defendants; however, none of Plaintiff's allegations indicate that Defendants have sexually assaulted him. Plaintiff does not allege a "threat or use of force" by a Defendant that caused Plaintiff to have "reasonable apprehension of imminent harmful or offensive contact." *See* Black's Law Dictionary (9th ed. 2009) (defining assault). The provision of ill-fitting absorbent pads could not be considered a threat or use of force, nor would it cause a reasonable apprehension of harmful or offensive contact. Thus, on its face, Plaintiff's request is unwarranted. He does not need an injunction to prevent Defendants from sexually assaulting him because they have not engaged in that conduct in the past and there is no indication that they will do so in the future.

Moreover, Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not. As one court recently explained:

> Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff. *Good v. Ohio Dep't of Rehab. & Corr.,* No. 2:11–cv–00857, 2011 U.S. Dist. LEXIS 127558, at *5 (S.D. Ohio Nov. 3, 2011). *See also Pope v. Oregon Dep't of Corr.,* No. 3:10–cv–00632–KI, 2012 U.S. Dist. LEXIS 71218, * 4 (D. Or. May 22, 2012) ("[I]t is well established that there is no private right of action under PREA.") (citing *Porter v. Jennings,* No. 1:10–cv–01811–AWI–DLB PC, 2012 U.S. Dist. LEXIS 58021, at *1 (E.D. Cal. Apr. 25, 2012) (citing numerous cases)); *LeMasters v. Fabian,* Civil No. 09–702 DSD/AJB, 2009 U.S. Dist. LEXIS 53016, at *2 (D. Minn. May 18, 2009) (PREA "does not create a right of action that is privately enforceable by an individual civil litigant."). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. . . . The statute does not grant prisoners any specific rights." *Chinnici v. Edwards,* No. 1:07–cv–229, 2008 U.S. Dist. LEXIS 61460, at *3 (D. Vt. Aug. 12, 2008) (quoting *Gonzaga Univ. v. Doe,* 536 U.S. 273, 280 (2002)); *Jones v. Schofield,* No. 1:08–CV–7 (WLS), 2009 WL 902154, at *2 (M.D. Ga. Mar. 30, 2009).

*Montgomery v. Harper*, No. 5:14CV–P38–R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014). Thus, Plaintiff does not have a substantial likelihood of success on his claim that Defendants violated the PREA, because he has no rights under that statute.

To the extent that Plaintiff that asserts a violation of his constitutional rights under § 1983, it is not clear what sort of injunctive relief he seeks, apart from a cessation of the alleged sexual assaults. *See* Fed. R. Civ. P. 65(d)(1) (requiring that an injunction "state its terms specifically" and describe "the act or acts restrained or required"). It is also not clear that Plaintiff will succeed on the merits of any constitutional claims, or that he will suffer irreparable harm in the absence of an injunction. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Plaintiff ostensibly wants prison officials to give him proper absorbent pads instead of the Kotex pads he has received in the past; however, he asserts that Defendants provided him the Tena pads that he desired on May 6, 2014. He does not allege facts or offer evidence indicating that they have continued to deny him appropriate absorbent pads since that time. Moreover, while he asserts that he needs a

sleep study, he acknowledges that Defendants have authorized one, even if it is not being provided as expeditiously as he would prefer. Additionally, he does not allege facts or offer evidence of any significant, irreparable harm resulting from a lack of attention to his toenails, an inability to access the talking book program, or an inability to use the grievance process.[1] Thus, Plaintiff has not clearly shown that an immediate and irreparable harm will occur in the absence of the requested injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning the provision of proper care for prisoners are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Consequently, Plaintiff's motion for a temporary restraining order will be denied.

### IV.  Form of Complaint

All civil rights complaints brought by prisoners must be submitted on the form provided by this Court. *See* W.D. Mich. LCivR 5.6(a). Plaintiff failed to file his motion (which the Court has also construed as a complaint) on the requisite form. If Plaintiff wishes to proceed with his action, he must carefully fill out the form and submit it to the Court. Accordingly, the Court will enter an order requiring Plaintiff to submit an amended complaint on the form.

---

[1] Plaintiff's motion is not supported by an affidavit or verified complaint as required by Rule 65(b)(1)(A) of the Federal Rules of Civil Procedure.

**Conclusion**

For the reasons set forth herein, Plaintiff's motion for a temporary restraining order will be denied. The Court will order Plaintiff to submit an amended complaint on the form. Failure by Plaintiff to comply with the Court's order may result in dismissal of the case without prejudice.

An Order consistent with this Opinion will be entered.


Dated: September 15, 2014           /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    UNITED STATES DISTRICT JUDGE